**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT JACKSON, | : | Civil No. 3:23-cv-2111 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| JACOB DAVIS, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Robert Jackson ("Jackson"), an inmate housed at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Township"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint against Food Service Instructor Jacob Davis, Food Service Instructor Shane Schell, Food Service Supervisor Corey Swartz, Correctional Officer Shultz, Correctional Officer Yetter, Correctional Officer Briner, and Correctional Officer Tieon. (Doc. 27).

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 81). The motion is ripe for resolution. For the reasons set forth below, the motion will be granted in part and denied in part.

## I. Statement of Undisputed Facts[1]

On April 16, 2022, Jackson was employed at SCI-Coal Township as an inmate kitchen employee. (Doc. 83 ¶ 1; Doc. 88 ¶ 1). On April 16, 2022, Jackson alleges that Defendant Davis stepped into his path and forcefully and violently shoulder-bumped him, causing Jackson to fall off balance. (*Id.* ¶ 2).

On April 28, 2022, Jackson filed Grievance Number 978372, wherein he alleged that Defendant Davis assaulted him when he hit him in the shoulder. (*Id.* ¶ 3). Defendants assert that Grievance Number 978372 was not timely appealed—Jackson's appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") needed to be post marked by September 29, 2022; however, the appeal was not postmarked until January 9, 2023. (Doc. 83 ¶ 4). Jackson asserts that he placed his appeal to SOIGA in the mail on October 12, 2022. (Doc. 88 ¶ 4).

Jackson complained to Defendant Swartz about what transpired, who allegedly ignored Jackson and instructed him to "go back to work with Davis." (Doc. 83 ¶ 5; Doc. 88 ¶ 5). Four months later, on August 12, 2022, Defendant Schell issued Misconduct 709588 for

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 83, 88). Defendants' statement of material facts contains 15 paragraphs—Jackson agrees with all paragraphs in Defendants' statement of material facts, except paragraph 4 and part of paragraph 13. (Docs. 83, 88).

refusal to work and refusal to obey orders. (*Id.* ¶ 6). Jackson alleges that Misconduct 709588 was issued in retaliation for Jackson's allegations against Defendant Davis. (*Id.* ¶ 7).

On August 15, 2022, Jackson filed Grievance Number 993836, wherein he alleged that Defendant Schell retaliated against him when he issued him a DC-141. (*Id.* ¶ 8). Jackson stated the following requests for relief: "having the matter fairly investigated", "return to work at the same position and pay rate", and to be "paid for days missed due to the DC-141." (*Id.*).

On August 23, 2022, Jackson was found guilty of refusal to obey an order but found not guilty of refusal to work. (*Id.* ¶ 9). Jackson was relieved of his work assignment in the kitchen. (*Id.* ¶ 10).

Jackson filed his initial complaint in this action against Davis and Swartz, and, on January 16, 2024, an Order was issued directing service of the complaint on Davis and Swartz. (*Id.* ¶ 11; *see also* Doc. 10).

On January 26, 2024, Shultz, Yetter, Briner, and Tieon searched Jackson's cell. (Doc. 83 ¶ 12; Doc. 88 ¶ 12).

On February 4, 2024, Jackson filed Grievance Number 1072844 regarding the cell search. (*Id.* ¶ 13). Grievance Number 1072844 did not name Shultz, Yetter, Briner, and Tieon. (*Id.*). Defendants assert that grievance number 1072844 stated that Jackson had recently filed a lawsuit against the prison, and the search was harassment and retaliatory in

nature. (Doc. 83 ¶ 13). In response, Jackson asserts that he did not file a lawsuit against the prison; he maintains that his "initial complaint was a lawsuit against Defendant Davis and Defendant Swartz." (Doc. 88 ¶ 13).

On January 26, 2024, Jackson requested the names of the correction officers who searched his cell that day. (Doc. 83 ¶ 14; Doc. 88 ¶ 14). On January 30, 2024, Jackson was informed that Shultz, Yetter, Briner, and Tieon searched his cell. (*Id.*).

Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager/designee may submit an Inmate Appeal to Final Review within 15 working days from the date of the Facility Manager/designee's decision. (*Id.* ¶ 15).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non -moving party

may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record...or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Discussion

Defendants seek summary judgment on the following grounds: (1) Jackson failed to properly exhaust his Eighth Amendment claim against Defendant Davis, and failed to properly exhaust his First Amendment retaliation claim against Defendants Shultz, Yetter, Briner, and Tieon; (2) Jackson failed to establish a First Amendment retaliation claim against Defendants Schell, Shultz, Yetter, Briner, and Tieon; and (3) Jackson failed to establish an Eighth Amendment deliberate indifference claim against Defendant Swartz. (Doc. 84).

### A. Administrative Exhaustion[2]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear

[2] Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 90).

that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court…to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "An administrative remedy is unavailable when it "operates as a simple dead end[,]…is so opaque that it becomes,

practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

The Department of Corrections employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. *Id.* § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. *Id.* § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the

prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

The Court of Appeals for the Third Circuit has emphasized the importance of prison officials adhering to their own procedural rules. *See Shifflett*, 934 F.3d at 367 (noting that "what is good for the goose is good for the gander"). Prison officials must adhere to the deadlines and other requirements of their grievance policies if they wish to raise exhaustion as an affirmative defense. *Downey*, 968 F.3d at 305. When prison officials fail to respond to a properly filed grievance within prescribed time limits, any further administrative remedies are deemed "unavailable," and the inmate is deemed to have exhausted his available administrative remedies within the meaning of the PLRA. *Shifflett*, 934 F.3d at 365 (holding "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement") (citing *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148 (3d Cir. 2016)).

### 1. Eighth Amendment Claim against Davis

Defendants first argue that Jackson failed to exhaust his Eighth Amendment claim against Davis.[3] (Doc. 84, at 11-13). In support of their position, Defendants have submitted Jackson's grievance record. (Doc. 83-1). Defendants argue that, although Jackson filed a grievance encompassing the excessive force claim arising on April 16, 2022, he did not properly exhaust this claim because he did not timely appeal the grievance to SOIGA. (Doc. 84, at 11-13).

Jackson filed one grievance related to his excessive force claim against Defendant Davis—grievance number 978378. (Doc. 83-1, at 7). In that grievance, filed on April 28, 2022, Jackson complained that Davis "hit[ ] [him] with his shoulder when [he] walked by him." (*Id.*). On August 23, 2022, the Grievance Officer denied the grievance and stated that "[Jackson's] allegations were investigated per the DC-ADM 001. The investigation deemed [the] allegations unsubstantiated." (*Id.* at 5-6). On September 4, 2022, Jackson appealed the denial of the grievance to the Facility Manager. (*Id.* at 4). On September 8, 2022, the Facility Manager upheld the initial review response and found as follows:

> I have reviewed your appeal and initial review response by Captain Scicchitano, while reviewing relevant records and speaking with appropriate staff. I write at this time to inform you that I concur with Captain Scicchitano and his initial review response, as he poignantly addressed all concerns at the initial level. At my level, you provide nothing further to warrant a different response.

---

[3] Defendants seek summary judgment on the Eighth Amendment claim against Davis on the basis of exhaustion, and do not address the claim on the merits.

> Your allegations were properly investigated via the DC-ADM 001. In short, any allegation of abuse is thoroughly investigated and reviewed by an agency outside of this facility. As Captain Scicchitano relayed at the initial level, the investigation yielded an unsubstantiated finding.
>
> Based upon what is referenced above, the Facility Manager upholds the initial review response. As a result, all requested relief is denied.

(*Id.* at 3).

Although the Facility Manager's response is dated September 8, 2022, Jackson maintains that he did not receive a response from the Facility Manager until October 11, 2022, which is 37 days from the date Jackson submitted his appeal and 22 days beyond the 15 days DC-ADM 804 § 2 (A)(2)(d)(1) requires for a response. (Doc. 89, at 10; Doc. 83-6, at 16). Jackson asserts that he submitted his appeal to SOIGA the following day, on October 12, 2022. (Doc. 89, at 10). In support of this assertion, Jackson has submitted a DC-138A cash slip dated October 12, 2022, which he claims contained his appeal to SOIGA. (Doc. 89-2).

Jackson asserts that he never received a response from SOIGA; therefore, on December 31, 2022, he sent a letter to the Chief Grievance Officer inquiring about the status of his appeal. (Doc. 89, at 10). In response, on January 19, 2023, the Chief Grievance Officer informed Jackson that "to date, no appeal to final review has been received by our office for this grievance. You may attempt to submit your appeal now, however this letter does not automatically grant you the right to a timely appeal, had it been deemed otherwise." (Doc. 83-1, at 2; Doc. 89-3, at 2). Jackson then submitted a final

appeal to SOIGA. On January 23, 2022, the Chief Grievance Officer dismissed the appeal for failure to comply with the provisions of DC-ADM 804. (Doc. 83-1, at 1; Doc. 89-5, at 2). The Chief Grievance Officer found as follows:

> You have not submitted a timely appeal to this office for final review. Your appeal to this office needed to be post marked by 9/29/22; however, it was not post marked until 01/09/23. Therefore, your appeal to this office is dismissed.

(*Id.*).

Jackson essentially argues that the grievance process was unavailable to him when he was not provided with a timely response to his appeal to the Facility Manager. More specifically, Jackson asserts that, although dated September 8, 2022, he did not receive the Facility Manager's response until October 11, 2022, and that he sent his appeal to final review on October 12, 2022. (Doc. 89, at 10-12).

Ultimately, whether the administrative remedy process was rendered unavailable to Jackson involves issues of fact that cannot properly be resolved on summary judgment. The Court, therefore, will deny Defendants' motion for summary judgment based on their assertion that Jackson failed to exhaust his administrative remedies with respect to his Eighth Amendment claim against Davis.

**2. First Amendment Retaliation Claim against Shultz, Yetter, Briner, and Tieon**

Defendants next argue that Jackson failed to properly exhaust his retaliation claim against Shultz, Yetter, Briner, and Tieon because he failed to name them in his initial

grievance of grievance number 1072844. (Doc. 84, at 13-15; Doc. 83-4, at 5; Doc. 89-6). While Jackson did not name Defendants Shultz, Yetter, Briner, or Tieon in his initial grievance, he identified them as the "search team." (Doc. 83-4, at 5; Doc. 89-6). In addition, in the Initial Review Response, the Grievance Officer stated that "[w]hile looking into this matter, I learned who the search team members were that day and spoke to all of them." (Doc. 83-4, at 4). Thus, the prison officials were on notice of the persons claimed to be doing wrong. *Spruill*, 372 F.3d at 234 (finding that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance."). The Court will deny summary judgment based on Defendants' assertion that Jackson failed to exhaust his retaliation claim against Shultz, Yetter, Briner, and Tieon.

B. <u>First Amendment Retaliation Claims</u>

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppan v. Dadonna*, 203

F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This third element is often referred to as "causation."

There are different ways to prove causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). When a plaintiff relies solely on circumstantial evidence of temporal proximity at summary judgment, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months. *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018). However, "there is not a bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant." *Id.* Another approach is to demonstrate "a pattern of antagonism coupled with timing." *DeFlaminis*, 480 F.3d at 267. Finally, causation can be inferred "from the evidence gleaned from the record as a whole." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). A plaintiff asserting retaliation "will have to show...that the decision maker had knowledge of the protected activity[.]" *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense." *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

### 1. Retaliation Claim against Schell

Jackson asserts that Defendant Schell issued a misconduct against him on August 12, 2022, in retaliation for the grievance he filed against Defendant Davis on April 28, 2022. (Doc. 27 ¶ 25). Following a hearing, the hearing examiner found Jackson guilty of refusing to work and sanctioned him with loss of his kitchen job. (Doc. 83-2, at 5).

Defendants argue that the retaliation claim against Schell fails for lack of temporal proximity and lack of retaliatory motive. (Doc. 84, at 15-18). In his opposition brief, Jackson does not challenge Defendants' argument that Schell is entitled to summary judgment on the retaliation claim. (*See* Doc. 89). By not addressing Defendants' argument in his opposition brief, Jackson leaves that argument unrefuted and any opposition from Jackson is waived. *See, e.g.*, *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's grant of a motion to dismiss on grounds raised in defendant's motion but not addressed in plaintiff's opposition despite "ample opportunity" to contest it) (citations omitted).

With respect to the first *Rauser* prong, the filing of an inmate grievance constitutes a constitutionally protected activity. *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment.").

As to the second *Rauser* element, the filing of a misconduct may represent an adverse action because it prompted sanctions or loss of privileges. *See Watson*, 834 F.3d at 423; *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("[plaintiff]'s allegation that he was falsely charged with misconduct in retaliation for filing complaints against [a corrections officer] implicates conduct protected by the First Amendment").

The third *Rauser* prong requires a prisoner to prove that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. On April 28, 2022, Jackson filed grievance number 978372 against Defendant Davis. (Doc. 83-1, at 7; Doc. 89-1, at 2). Approximately four months later, on August 12, 2022, Defendant Schell issued misconduct number 709588 against Jackson. (Doc. 83-2, at 6). Nothing in the record before the Court would permit a finding that Defendant Schell was aware of the prior grievance that Jackson filed against Defendant Davis. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015) (noting that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted"). It is well-settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like filing a grievance) against a defendant or nonparty prison official who is not the

alleged perpetrator of the retaliatory adverse action. *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential). Any speculation on Jackson's part is insufficient to defeat summary judgment. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017). Jackson has failed to present any evidence establishing a causal link between his protected conduct and the action of Defendant Schell. Defendant Schell is entitled to judgment in his favor on the retaliation claim.

### 2. Retaliation Claim against Shultz, Yetter, Briner, and Tieon

Jackson next asserts that Shultz, Yetter, Briner, and Tieon searched his cell on January 26, 2024, in retaliation for filing the instant lawsuit against Davis and Swartz on December 17, 2023.[4] (Doc. 27 ¶¶ 34, 38; *see also* Doc. 1). Defendants argue that Jackson can only meet the first element of a retaliation claim. (Doc. 84, at 18-20).

---

[4] Jackson asserts that he initiated the instant action against Davis and Swartz on January 16, 2024. (Doc. 27 ¶ 33). However, January 16, 2024 is the date the Court issued the Service Order in this matter. (Doc. 10). Jackson's initial complaint against Davis and Swartz is dated December 17, 2023, and was received and docketed by the Court on December 21, 2023. (Doc. 1).

As to the first element of *Rauser*, Jackson has established that he was engaged in constitutionally protected activity by filing a lawsuit. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) ("the filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity") (citation omitted).

With respect to the second *Rauser* element, Defendants assert that a cell search is not a sufficiently adverse action. (Doc. 84, at 19-20). The Court is unpersuaded by Defendants' argument. While cell searches are a routine part of prison life, *Hudson v. Palmer*, 468 U.S. 517, 526-27, it does not mean that searches that constitute "calculated harassment unrelated to prison needs" are permissible. *Id.* at 530. The Third Circuit has held that a retaliatory search and seizure may be sufficient to satisfy the adverse action prong of a retaliation clam. *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002)). Moreover, Jackson is not basing his retaliation claim only upon the cell search. Rather, Jackson asserts that his personal property was destroyed and his cellmate's property was not searched and remained untouched. (Doc. 89, at 16-21). In support of this assertion, Jackson has submitted his cellmate's declaration wherein he attests that his personal property was not searched, and that only Jackson's personal property was searched and destroyed during the cell search. (Doc. 89-7, at 4). The Court finds that the cell search and destruction of personal property satisfies the adverse action prong of the *prima facie* retaliation claim.

Jackson's retaliation claim falters at the third element—causation—which requires a prisoner to prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy*, 429 U.S. at 287). Jackson initiated the instant lawsuit on December 17, 2023, against Defendants Davis and Swartz. (Doc. 1; Doc. 27 ¶ 38). He asserts that Defendants Shultz, Yetter, Briner, and Tieon searched his cell on January 26, 2024, in retaliation for filing the initial complaint against Defendants Davis and Swartz. (Doc. 27 ¶ 34). The problem is that the initial complaint in this action targeted different prison officials (not Shultz, Yetter, Briner, and Tieon). Jackson has proffered no evidence that would establish knowledge of this protected conduct by Defendants Shultz, Yetter, Briner, and Tieon.

As stated *supra*, causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action. Such assertions fail to establish or even infer knowledge of the protected conduct and they likewise fail to show why a defendant would take the alleged adverse action. Jackson failed to establish any causal connection between his protected conduct (filing this lawsuit against Defendants Davis and Swartz), and Defendants Shultz, Yetter, Briner, and Tieon.

Jackson's arguments to the contrary are unpersuasive. He primarily contends that the temporal proximity between the protected activity and the allegedly retaliatory action demonstrates causation. (Doc. 89, at 18-19). But the only antagonistic incident that

predates the alleged January 26, 2024 retaliation involves Defendants Davis and Swartz. Thus, without any evidence establishing causation, Jackson's retaliation claim against Shultz, Yetter, Briner, and Tieon is fatally deficient. Defendants Shultz, Yetter, Briner, and Tieon are entitled to judgment in their favor on the First Amendment retaliation claim.

C. Eighth Amendment Failure to Protect Claim against Swartz

A prison staff member has "a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (internal quotation omitted). In a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. *Smith*, 293 F.3d at 650-51.

Jackson avers that Defendant Swartz violated his constitutional rights by forcing him to work with Defendant Davis. (Doc. 27 ¶¶ 18, 52). Jackson asserts that, after Defendant Davis allegedly shoulder-bumped him, he complained to Defendant Swartz, but Swartz ordered him to continue to work with Davis. (*Id.*). Jackson thus claims that "Swartz ignored a *potential* risk for serious harm against [him]." (Doc. 89, at 24) (emphasis added).

Jackson does not assert that Defendant Swartz had an opportunity to intervene *before* the alleged shoulder bump by Defendant Davis. Jackson's failure to protect claim rests solely on his assertion that Defendant Swartz forced him to go back to work with Davis *after* the alleged excessive use of force by Defendant Davis. There is simply no evidence in

the record that Defendant Swartz knew or had reason to know that Davis posed a risk of harm to Jackson, or that Swartz had the opportunity to intervene prior to the alleged excessive use of force. Jackson's assertion that Defendant Swartz instructed him to go back to work with Davis occurred after the incident and does not speak to a failure to protect. Accordingly, summary judgment will be granted on the failure to protect claim against Defendant Swartz.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment. (Doc. 81). The motion will be granted as to Jackson's First Amendment retaliation claim against Defendants Schell, Shultz, Yetter, Briner, and Tieon, and his Eighth Amendment failure to protect claim against Defendant Swartz. The motion will be denied on the basis that Jackson failed to exhaust his administrative remedies. Defendants will be permitted to file a renewed motion for summary judgment that addresses the merits of Jackson's Eighth Amendment claim against Davis.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 29, 2026